UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

JOHN GLEESON *in His Own Right and as Co-Administrator of the Estate of John P. Gleeson, Deceased*, **MARGARET GLEESON** *in Her Own Right and as Co-Administrator of the Estate of John P. Gleeson, Deceased*, **DONNA DEMPSEY** *on behalf of and as the Natural Parent and Guardian of the Property of both E.A.G., an Infant, and J.P.G., an Infant* ,

Plaintiffs,

- against -

COUNTY OF NASSAU, NASSAU COUNTY CORRECTIONAL CENTER, NASSAU COUNTY SHERIFF'S DEPARTMENT, MICHAEL J. SPOSATO *Individually and as Sheriff of Nassau County*, **ARMOR CORRECTIONAL HEALTH SERVICES, INC.**, **ARMOR CORRECTIONAL HEALTH SERVICES OF NEW YORK, INC.**, NASSAU COUNTY CORRECTIONS OFFICERS, "JOHN DOES 1-10" *in their Individual and Official Capacities* , **ARMOR CORRECTIONAL HEALTH SERVICES, INC. EMPLOYEES AND AGENTS**, "JOHN AND JANE DOES 11-20" *in their Individual and Official Capacities*,

Defendants.

---------------------------------------------------------------- X

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★  NOV 0 7 2016  ★

BROOKLYN OFFICE

**MEMORANDUM & ORDER**

15 Civ. 6487 (AMD) (RL)

**ANN DONNELLY,** District Judge.

The plaintiffs filed this action against Nassau County, Nassau County Correctional Center ("NCCC"), Nassau County Sheriff's Department, Nassau County Sheriff Michael J.

Sposato (collectively the "County defendants"), Armor Correctional Health Services ("Armor Parent"), Armor Correctional Health Services of New York ("Armor New York") (collectively the "Armor defendants"), and unnamed corrections officers and health services employees, in connection with the death of John P. Gleeson, who died while an inmate at the Nassau County Correctional Center ("NCCC"). On April 21, 2016, the Armor defendants moved to dismiss or "restrict" the complaint pursuant to Rules 8(a), 8(d), 12(f) and 12(b)(6) of the Federal Rules of Civil Procedure. Then, on September 23, 2016, the Armor defendants sought leave to file a motion to dismiss the Armor Parent for lack of personal jurisdiction. For the reasons set out below and on the record at the October 27, 2016 hearing, the defendants' April 21, 2016 motion to dismiss and their request for leave to file a successive motion are denied.

## BACKGROUND

Gleeson became a detainee at NCCC on May 29, 2014. (Compl. ¶ 136.) He had been charged with burglary in the third degree, relating to his alleged theft of scrap metal wire. (Compl. ¶ 136.) At the time of his detention, he had a 12-year history of angioedema.[1] (Compl. ¶ 137.)

The plaintiffs allege that officials at the NCCC know about Gleeson's condition. (Compl. ¶ 137.) They explain that when Gleeson experienced an angioedema reaction, "[f]irst his hands would become red and swollen, then, his arms would become red and would swell. Next, his chest would become swollen, and finally, if the attack got that far, his neck and head would become red and swollen, and he would have difficulty breathing." (Compl. ¶ 144.) If an

---

[1] Angioedema is a skin reaction that causes itchy welts (akin to hives). However, angioedema affects deeper layers of skin than hives, often around a person's eyes and lips. In most cases, the condition is harmless. However, "[s]erious angioedema can be life-threatening if swelling causes your throat or tongue to block your airway." "Hives and Angioedema," Mayo Clinic, *available at* http://www.mayoclinic.org/diseases-conditions/hives-and-angioedema/basics/definition/con-20014815.

attack were allowed to progress without the proper treatment, the plaintiffs allege that Gleeson would die from asphyxiation or heart failure. (Compl. ¶ 146.)

Each time Gleeson visited the NCCC medical treatment area, the plaintiffs report that he was given the wrong medication to treat his condition. (Compl. ¶ 152.) They allege further that the medications with which he was treated "served as a trigger mechanism and exacerbated his condition." (Compl. ¶ 152.)

On July 14, 2014, at about 3:00pm, Gleeson sought medical help because of the onset of an angioedema reaction. (Compl. ¶ 149.) The plaintiffs believe that medical personnel saw him, and returned him to his housing unit at 3:45 p.m. (Compl. ¶ 149.) The plaintiffs assert that his symptoms were unresolved, he became badly swollen, and he was returned to the medical unit at 4:30 p.m. (Compl. ¶ 150.) The plaintiffs state that Gleeson asked to be hospitalized, but that medical personnel sent him to his housing unit. (Compl. ¶¶ 151, 153.) Gleeson reported to other inmates that medical personnel gave him Benedryl and sent him back to his unit. (Compl. ¶ 161.)

The plaintiffs allege that at approximately 7:00 p.m., Gleeson's neck was swollen to twice its normal size, his head was swollen, and he was turning blue and having difficulty breathing.[2] (Compl. ¶ 154.) The plaintiffs allege that he called for help to no avail. (Compl. ¶ 155.) By 10:00 p.m., his neck was almost three times its normal size and he could not breathe. (Compl. ¶ 156.) Gleeson was transported to Nassau University Medical Center at 10:56pm. (Compl. ¶ 165.) NCCC personnel contacted Gleeson's mother at 11:30 p.m. and told her that her son was dead. (Compl. ¶ 166.) The Nassau County Medical Examiner determined that the cause of death was cardiorespiratory arrest due to laryngeal edema and angioedema. (Compl. ¶ 147.)

---

[2] The complaint refers to inmate witnesses who described Gleeson's condition.

3

The Medical Review Board from New York State Commission of Correction

("NYSOC") investigated Gleeson's death and issued a final report on September 15, 2015.

(Compl. ¶ 168.)  The report stated:

> Armor Inc.'s delivery of healthcare in this matter was incompetent and deficient due to a lack of adequate protocol, lack of coordination, lack of effective communication, and deficient medical knowledge by physicians and midlevel clinicians . . . [Armor] has engaged in a pattern of inadequate and neglectful medical care and [the Board] questions their ability to meet and provide for the healthcare needs of jail inmates.

(Compl. ¶ 171.)

On June 16, 2015, the plaintiffs, John and Margaret Gleeson, brought suit in their own

rights and as co-administrators of the deceased's estate, and Donna Dempsey brought suit on

behalf of the deceased's infant children.  The complaint is long—63 pages and 334 paragraphs—

and details a history of other inmates' complaints about NCCC, inmate deaths, and governmental

oversight, from the 1980s to the present.  The complaint also discusses Armor's track record for

providing medical services in Nassau County, and in other states, including Florida, Virginia,

and Oklahoma.

On December 23, 2015, the Nassau County and Armor defendants requested a pre-

motion conference regarding their anticipated Rule 12(b)(6) motion to dismiss.[3]  After that pre-

motion conference, on April 21, 2016, the Armor defendants moved to dismiss pursuant to Rules

12(b)(6) and 12(f).  The Nassau County defendants answered on August 8, 2016.  Thereafter, on

September 23, 2016, the Armor defendants sought leave to file a successive motion to dismiss

the complaint, this time on the grounds that the court lacked personal jurisdiction over the Armor

parent company, Armor Correctional Health Services, Inc.  At a conference on October 27, 2016,

I denied the Armor defendants' April 21, 2016 motion to dismiss and the defendants' request to

---

[3] This case was reassigned to me in December of 2015.

make a second motion to dismiss on personal jurisdiction grounds. The reasons for that decision are more fully explained below.

## DISCUSSION

### I.    April 21, 2016 Motion to Dismiss, or Strike, Portions of the Complaint

On April 21, 2016, the defendants moved to dismiss the complaint for Rule 8 pleading deficiencies, requested that the court strike portions of the complaint pursuant to Rule 12(f), and moved to dismiss the claims for emotional distress pursuant to Rule 12(b)(6) for failure to state a claim. The plaintiffs opposed this motion.

### A. Rule 8

The defendants argued that the plaintiffs' complaint is long, and that it contains "hearsay statements that are unnecessary, irrelevant, defamatory and scandalous; statements about other lawsuits; editorials; references to newspaper articles; the supposed thoughts of other inmates; the reference to abuse of other inmates; references to evidentiary materials – all of which are improper and do nothing to advance plaintiff's [sic] cause." (Defs.' Mem. at 9 (ECF No. 21-3).) The defendants contend that the plaintiffs' complaint is meant to "incite public opinion." (Defs.' Mem. at 9.)

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). Although Rule 8 does not demand that a complaint be a model of clarity, it requires that the complaint give each defendant fair notice.

Dismissal under Rule 8 is appropriate only in "those cases in which the complaint is so

5

confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Owens v. McCall*, 5 F. App'x 15, 16 (2d Cir. 2001). That is not the case here. The Armor defendants' motion to dismiss the complaint for plaintiffs' purported violations of Rule 8 summarizes the complaint as follows: "that the defendants were negligent, recklessly disregarded the decedent, failed to appreciate his medical condition and medically mistreated the decedent's condition of angioedema all of which caused his death." (Defs.' Mem. at 1.) The defendants' motion identifies each of the parties named in the complaint and lists the plaintiffs' claims for relief. (Defs.' Mem. at 1–2, 6–8.) It is evident from the defendants' motion that the complaint gives them fair notice of the plaintiffs' claims and the grounds on which they are based. Moreover, Nassau County defendants managed to answer this complaint. Under the circumstances, I denied the defendants' motion to dismiss the complaint for Rule 8 pleading deficiencies.

### B. Rule 12(f)

The defendants argued that the Court should strike portions of the plaintiffs' complaint, and submitted a copy of the pleading, with the offending portions underlined. Under Rule 12(f), the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Whether to grant a motion to strike is within the district court's discretion. *Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011). Matter is "immaterial" or "impertinent" if it has no "essential or important relationship" to the claim for relief, or otherwise is not "necessary to resolve the disputed issues." *Id.* (citations omitted). Allegations are scandalous if they "reflect[] unnecessarily on the defendant's moral character, or use[] repulsive language that detracts from the dignity of the court." *Id.* (citation omitted).

6

Motions to strike "are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." *Crespo v. N.Y. City Transit Auth.*, No. 01-cv-0671, 2002 WL 398805, at *11 (E.D.N.Y. Jan. 7, 2002). The Second Circuit has noted that district courts should not "tamper" with the complaint without a "strong reason for doing so." *Id.* (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).

To prevail on a Rule 12(f) motion to strike, the defendants must show "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011) (citation omitted). In this case, the defendants do not demonstrate, and I do not find, that the allegations they seek to strike would not be admissible, that the offending content of the complaint has "no bearing" on the relevant issues, nor that the defendants would be prejudiced by permitting the allegations to remain.

### C. Intentional Infliction of Emotional Distress Claims

The co-administrators of Mr. Gleeson's estate have brought a state law tort claim for intentional infliction of emotional distress (for the infliction of emotional distress on the deceased). The parties agree that John and Margaret Gleeson are not suing as the decedent's parents but as the duly appointed co-administrators of the decedent's estate.

The defendants contend that the intentional infliction of emotional distress ("IIED") claim should be dismissed because it is not timely. Under New York law, the statute of limitations for intentional torts, including IIED, is one year. N.Y. C.P.L.R. 215. Because the alleged tortious acts occurred on July 14, 2014, and the plaintiffs did not file this action until

7

November 16, 2015, the IIED claim is time-barred unless the statute of limitations has been tolled.

In response to the defendants' motion, the plaintiffs contend that the statute of limitations was tolled by the process of obtaining letters of administration. The plaintiffs maintain that the letters of administration issued on June 18, 2015—11 months after Mr. Gleeson's death. However, they did not append their letters of administration to their submission, nor were those letters of administration incorporated into the complaint.[4]

In reviewing a motion to dismiss under Rule 12(b)(6), the court must draw all reasonable inferences in the favor of the plaintiff. In this case, it is reasonable to infer that there was a lapse in time between Mr. Gleeson's death and the issuance of letters of administration. In light of this, I deny the defendants' motion to dismiss the IIED claim. This is a factual question more appropriately reserved for summary judgment.

## II.     Proposed Second Motion to Dismiss

On September 23, 2016, the Armor defendants sought leave to file a second motion to dismiss on the basis that this Court does not have personal jurisdiction over the defendant Armor Correctional Health Services, Inc. That request was denied.

Federal Rule of Civil Procedure 12(h)(1) requires a party to raise a defense of lack of personal jurisdiction either by motion or in a responsive pleading; otherwise, the defense is deemed waived.[5] The Armor defendants moved to dismiss the complaint pursuant to rules 12(f) and 12(b)(6). In doing so, they did not assert that this court lacked personal jurisdiction over the Armor parent company. Consequently, pursuant to rule 12(h)(1), the Armor defendants waived

---

[4] When matters outside the pleadings are presented in opposition to a 12(b)(6) motion for summary judgment, the court must either exclude the materials or convert the motion to one for summary judgment. Fed. R. Civ. P. 12(d).

[5] "The requirement that a court have personal jurisdiction is a due process right that may be waived." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 729 (2d Cir. 1998).

that defense.  I thus deny the Armor defendants' request for leave to file a motion to dismiss.

## CONCLUSION

For the reasons set out above and as stated on the record on October 27, 2016, the defendants' April 21, 2016 motion is denied, and their request for leave to file a second motion to dismiss is also denied.

**SO ORDERED.**

s/Ann M. Donnelly

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
      November 7, 2016